11041

# STATE OF NORTH CAROLINA

MECKLENBURG County

File No.
12 CVS _____

In The General Court Of Justice
☐ District  ☒ Superior Court Division

Name Of Plaintiff
DATA DRIVEN SAFETY, INC.

Address

City, State, Zip

## CIVIL SUMMONS
☐ ALIAS AND PLURIES SUMMONS (ASSESS FEE)

G.S. 1A-1, Rules 3, 4

**VERSUS**

Name Of Defendant(s)
DRIVER'S HISTORY, INC

Date Original Summons Issued

Date(s) Subsequent Summons(es) Issued

### To Each Of The Defendant(s) Named Below:

Name And Address Of Defendant 1
DRIVER'S HISTORY, INC
c/o Officer, Director, or Managing Agent or Person in Charge of the
1 Keystone Avenue, Unit 700
Cherry Hill, New Jersey 08003

Name And Address Of Defendant 2

**A Civil Action Has Been Commenced Against You!**

You are notified to appear and answer the complaint of the plaintiff as follows:

1. Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and

2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

Name And Address Of Plaintiff's Attorney (If None, Address Of Plaintiff)
Lauren B. Loftis
McGuireWoods LLP
201 N. Tryon Street, Suite 3000
Charlotte                    NC  28202

Date Issued: 6-8-2012
Time: 1:06  ☐ AM ☒ PM
Signature
☒ Deputy CSC  ☐ Assistant CSC  ☐ Clerk Of Superior Court

☐ **ENDORSEMENT (ASSESS FEE)**
This Summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this Summons must be served is extended sixty (60) days.

Date Of Endorsement
Time  ☐ AM ☐ PM
Signature
☐ Deputy CSC  ☐ Assistant CSC  ☐ Clerk Of Superior Court

**NOTE TO PARTIES:** *Many counties have MANDATORY ARBITRATION programs in which most cases where the amount in controversy is $15,000 or less are heard by an arbitrator before a trial. The parties will be notified if this case is assigned for mandatory arbitration, and, if so, what procedure is to be followed.*

AOC-CV-100, Rev. 6/11
© 2011 Administrative Office of the Courts

(Over)

**EXHIBIT A**

DATA DRIVEN SAFETY, INC.,

    *Plaintiff,*

v.                                                                **COMPLAINT**

DRIVER'S HISTORY, INC.,

    *Defendant.*

---

Plaintiff Data Driven Safety, Inc. ("DDS" or "Plaintiff"), by and through its undersigned counsel, files this Complaint and states the following:

## PARTIES, JURISDICTION AND VENUE

1. Plaintiff is a corporation organized and existing under the laws of the State of North Carolina, and maintains its principal place of business at 209 Delburg Street, Suite 205, Davidson, North Carolina 28036.

2. Upon information and belief, Defendant Driver's History, Inc. ("DHI" or "Defendant") is a corporation organized and existing under the laws of the State of New Jersey, and maintains its principal place of business at 1 Keystone Avenue, Unit 700, Cherry Hill, New Jersey 08003.

3. This Court has personal jurisdiction over Plaintiff because it is a domestic corporation.

4. This Court has personal jurisdiction over Defendant because Defendant executed a contract for the provision of services to be rendered by Plaintiff, a domestic corporation.

5. Venue is proper in this Court because Plaintiff resides within this county.

## FACTUAL ALLEGATIONS

6. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 5 as if fully set forth herein.

7. Plaintiff provides safety services that involve the collection, manipulation and transfer of data derived from public records. Specifically, those records include information derived from the issuance and/or adjudication of civil traffic infractions and criminal traffic cases in a number of states, including the State of Florida.

8. Upon information and belief, Defendant is in the business of providing organizations that are engaged in underwriting personal and/or commercial auto insurance ("Subscribing Underwriters") with access to public record information derived from civil traffic and criminal traffic court data.

9. Beginning in or around March, 2011, Plaintiff and Defendant began discussions to evaluate entering into a business relationship in which Plaintiff would provide data delivery services to Defendant.

10. On July 25, 2011, Plaintiff and Defendant entered into a written contract, titled "Public Record Data Subscription Agreement" (the "Data Subscription Agreement").

11. On October 10, 2011, Plaintiff and Defendant executed a written amendment to the Data Subscription Agreement, titled "Amendment to Public Record Data Subscription Agreement" ("the Amendment").

12. The Data Subscription Agreement and the Amendment were each supported by valid consideration.

2

13. Under the Data Subscription Agreement, Plaintiff agreed to use commercially reasonable efforts to provide Defendant with certain data relating to civil traffic infractions and criminal traffic cases that had been adjudicated, or would be adjudicated, in the state, county and circuit trial courts of the State of Florida (the "Florida Data").

14. In addition, at the request of Defendant, Plaintiff provided Defendant with certain misdemeanor and felony public record data generated by courts and law enforcement agencies in the State of Florida to capture traffic-related cases "mis-categorized" by courts (the "Additional Data").

15. The Florida Data was segregated into two categories: (1) data created after the "Go-Live Date," which was referred to therein and hereafter as the "Future Florida Data;" and (2) data created between October 10, 2009 and October 9, 2011, which was referred to therein and hereafter as the "Historical Florida Data" in Sections 2(a) and 2(b), respectively, of the Data Subscription Agreement.

16. Defendant elected, pursuant to Section B of Schedule B of the Data Subscription Agreement, attached hereto as **Exhibit A**, that the "Go-Live Date" be established as November 1, 2011.

17. Pursuant to the Data Subscription Agreement, Defendant was granted a limited license to use the Florida Data (the "Limited License") to provide its Subscribing Underwriters with access to a secure, limited access database to support individual queries in furtherance of their lawful underwriting efforts.

18. In exchange, Defendant agreed to pay monthly fees as outlined in Schedule B of the Data Subscription Agreement. Schedule B of the Data Subscription Agreement is attached hereto as **Exhibit A**.

3

19. The Data Subscription Agreement was to remain in full force and effect for a minimum term of four years after the November 1, 2011 "Go-Live Date."

20. The Data Subscription Agreement states in Section B of Schedule B that the fees for delivering the Historical Florida Data were "amortized ratably over the forty-eight (48) monthly payments required herein."

21. The Data Subscription Agreement carried a limited right of termination ("Limited Right of Termination") that permitted early termination of the Data Subscription Agreement only under specifically-enumerated conditions.

22. The Limited Right of Termination provided that Defendant could terminate the Data Subscription Agreement only upon (i) mutual prior written consent, (ii) in the event that Plaintiff filed a petition for bankruptcy, or (iii) in the event of Plaintiff's uncured default of a material provision of the Data Subscription Agreement.

23. Further, in relevant part, the Data Subscription Agreement provided that:

> In the event of a default of a material provision of this Agreement by one Party, the non-defaulting Party (the "Non-Defaulting Party") may terminate this Agreement, without penalty, with thirty (30) days' written notice to the other Party (the "Defaulting Party"); provided, however, if during this notice period the Defaulting Party remedies such failure, this Agreement will continue in full force and effect despite such notice. (emphasis in original).

24. Under the Limited Right of Termination, Defendant could not unilaterally terminate the Data Subscription Agreement at will.

25. The Data Subscription Agreement required that, in the event of termination of the Data Subscription Agreement, the Limited License would be automatically revoked. The Data Subscription Agreement also required Defendant to undertake certain actions regarding the data

4

provided by Plaintiff (the "License Revocation Responsibilities"). Specifically, the License Revocation Responsibilities required:

> Immediately following a License Revocation Event, Licensee shall for itself (and shall promptly cause all Subscribing Underwriters to): (1) immediately cease all use of the Data; and (2) promptly delete, purge, and/or destroy all Data (and derivatives) however obtained and all copies thereof. Licensee shall, upon Licensor's reasonable request, promptly deliver to Licensor a certificate in a form reasonably satisfactory to Licensor executed by a senior officer of Licensee attesting to such return or destruction.

26. Plaintiff performed its obligations as required by the Data Subscription Agreement, and never defaulted on any material provision of the Data Subscription Agreement.

27. In a letter dated April 18, 2012 ("the April 18, 2012 letter"), Defendant asserted that the Historical Florida Data provided by Plaintiff failed to meet the requirements of the Data Subscription Agreement.

28. The April 18, 2012 letter did NOT assert that the Future Florida Data provided by Plaintiff failed to meet the requirements of the Data Subscription Agreement.

29. The April 18, 2012 letter was wrongful and without cause because the Historical Florida Data provided by Plaintiff met or exceeded the requirements of the Data Subscription Agreement.

30. In a letter dated May 18, 2012 ("the May 18, 2012 letter"), Defendant asserted that the Future Florida Data provided by Plaintiff failed to meet the requirements of the Data Subscription Agreement.

31. The May 18, 2012 letter did NOT assert that the Historical Florida Data provided by Plaintiff failed to meet the requirements of the Data Subscription Agreement.

5

32. Upon information and belief, Defendant had failed as of May 18, 2012, to load significant portions of the Future Florida Data provided by Plaintiff into Defendant's database.

33. The May 18, 2012 letter was wrongful and without cause because the Future Florida Data provided by Plaintiff met or exceeded the requirements of the Data Subscription Agreement.

34. In the May 18, 2012 letter, Defendant stated that it was immediately terminating the Data Subscription Agreement.

35. As of May 18, 2012, Plaintiff had not defaulted on any material provision of the Data Subscription Agreement.

36. As of May 18, 2012, Plaintiff had not declared bankruptcy.

37. As of May 18, 2012, there was no mutual prior written consent providing for the early termination of the Data Subscription Agreement.

38. Accordingly, under the Limited Right of Termination under the Data Subscription Agreement, Defendant had no right to terminate the Data Subscription Agreement as of May 18, 2012.

39. Defendant's unjustified termination of the Data Subscription Agreement was wrongful, without cause, and failed to comply with the substantive requirements for early termination of the Data Subscription Agreement under the Limited Right of Termination.

40. Furthermore, Defendant failed to provide thirty (30) days' written notice of termination of the Data Subscription Agreement as required.

41. Defendant's failure to provide thirty (30) days' written notice of termination of the Data Subscription Agreement precluded Plaintiff's opportunity to cure any alleged default by Plaintiff of a material provision of the Data Subscription Agreement.

42. Defendant's unjustified termination of the Data Subscription Agreement failed to comply with the Data Subscription Agreement's procedural requirements for early termination.

43. Defendant's unjustified termination of the Data Subscription Agreement constitutes a breach of the Data Subscription Agreement.

44. Moreover, as of May 1, 2012, Defendant had failed to pay $71,650.00 in fees required by the Data Subscription Agreement by failing to pay the following amounts: (a) January 2012 - $20,000.00; (b) February 2012 - $20,300.00; (c) March 2012 - $10,600.00; (d) April 2012 - $20,750.00.

45. Defendant's failure to pay the fees required by the Data Subscription Agreement constitutes a breach of the Data Subscription Agreement.

46. Following Defendant's unjustified termination of the Data Subscription Agreement, Plaintiff made a reasonable request that Defendant promptly deliver a certificate executed by a senior officer of the Defendant, attesting to the return or destruction of all "Confidential Information" (as that term is used in the Data Subscription Agreement), the Florida Data, and the Additional Data, as required by the License Revocation Responsibilities under the Data Subscription Agreement ("Certificate of Compliance").

47. Upon information and belief, Defendant has failed to destroy the "Confidential Information," the Florida Data, and the Additional Data.

48. Defendant has failed to provide the Certificate of Compliance.

49. Defendant, through counsel, has agreed to provide the Certificate of Compliance only on the condition that Plaintiff return all fees paid to Plaintiff by Defendant under the Data Subscription Agreement.

7.

50. Defendant is not entitled to the return of any fees paid to Plaintiff under the Data Subscription Agreement.

51. By failing to provide the Certificate of Compliance, Defendant has failed to comply with the License Revocation Responsibilities contained in the Data Subscription Agreement.

52. Defendant's failure to comply with the License Revocation Responsibilities constitutes a breach of the Data Subscription Agreement.

## FIRST CAUSE OF ACTION
### (Breach of Contract)

53. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 52 as if fully set forth herein.

54. Plaintiff and Defendant entered into the Data Subscription Agreement, pursuant to which Plaintiff agreed to provide data delivery services to Defendant in exchange for the Defendant's payment of fees to Plaintiff.

55. The Data Subscription Agreement is valid and enforceable, and was supported by adequate consideration.

56. Defendant wrongfully and unjustifiably terminated the Data Subscription Agreement.

57. Defendant's termination of the Data Subscription Agreement failed to comply with both substantive and procedural requirements for termination.

58. Defendant's termination of the Data Subscription Agreement constitutes a breach of its terms.

8

59. As of June 1, 2012, Defendant has failed to pay $114,150.00 in fees required by the Data Subscription Agreement.

60. Defendant's failure to pay the required fees constitutes a breach of the Data Subscription Agreement's terms.

61. Defendant has failed to provide Plaintiff with the Certificate of Compliance.

62. Accordingly, Defendant has failed to comply with the License Revocation Responsibilities.

63. Defendant's failure to comply with the License Revocation Responsibilities constitutes a breach of the Data Subscription Agreement's terms.

64. At all times prior to Defendant's unjustified termination of the Data Subscription Agreement, Plaintiff performed its obligations according to the Data Subscription Agreement's terms.

65. As a result of Defendant's breach of the Data Subscription Agreement, Plaintiff has incurred damages in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
(Conversion)

66. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 65 as if fully set forth herein.

67. Plaintiff owns the Florida Data and the Additional Data that was provided to Defendant throughout the duration of the Data Subscription Agreement.

68. Pursuant to the terms of the Data Subscription Agreement, Defendant was granted only a Limited License to use the Florida Data.

9

69. Pursuant to the terms of the Data Subscription Agreement, upon Defendant's unjustified termination of the Data Subscription Agreement, Defendant's Limited License was automatically revoked.

70. Defendant's unjustified termination of the Data Subscription Agreement and the License Revocation Responsibilities of the Data Subscription Agreement required that Defendant immediately cease all use of the Florida Data and also to promptly delete, purge, and/or destroy all of the Florida Data and the Additional Data.

71. Defendant has failed to provide Plaintiff with the Certificate of Compliance.

72. Upon information and belief, Defendant has failed to cease all use of the Florida Data, and has also failed to delete, purge, and/or destroy all of the "Confidential Information," the Florida Data, and the Additional Data.

73. Upon information and belief, Defendant has the unauthorized possession of Plaintiff's property, or has converted Plaintiff's property.

74. As a result of Defendant's wrongful conversion of Plaintiff's property, Plaintiff has incurred damages in an amount to be determined at trial.

### THIRD CAUSE OF ACTION
(Unfair and Deceptive Trade Practices, N.C. Gen. Stat. § 75-1.1)

75. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 74 as if fully set forth herein.

76. Defendant's unjustified termination of the Data Subscription Agreement and the License Revocation Responsibilities require Defendant to promptly deliver the Certificate of Compliance upon reasonable request by Plaintiff.

77. Plaintiff has made a reasonable request for the delivery of the Certificate of Compliance.

78. Defendant has failed to provide the Certificate of Compliance.

79. Defendant has represented to Plaintiff that it will provide the Certificate of Compliance only if Plaintiff agrees to return to Defendant all fees paid by Defendant during the course of the Data Subscription Agreement.

80. Defendant is wrongfully and unjustifiably attempting to hold Plaintiff hostage by refusing to cease using and destroy the "Confidential Information," the Florida Data, and the Additional Data as required by the Data Subscription Agreement unless Plaintiff returns the fees that Plaintiff rightfully collected from Defendant under the terms of the Data Subscription Agreement.

81. Defendant's conduct constitutes substantial aggravating circumstances attending Defendant's underlying breach of the Data Subscription Agreement.

82. Defendant's conduct constitutes unfair and deceptive trade practices.

83. Defendant's unfair and deceptive trade practices were in and affecting commerce.

84. Defendant's unfair and deceptive trade practices have proximately caused injury to Plaintiff in an amount to be determined at trial.

WHEREFORE, Plaintiff prays that:

(i) Judgment be entered against Defendant on the First, Second, and Third Claims;

(ii) Plaintiff be awarded a declaratory judgment that no monies are due and owing to Defendant;

(iii) Defendant be ordered to comply with the requirements of the License Revocation Responsibilities, specifically, that Defendant be required to cease all use of the Florida Data, that Defendant delete, purge, and/or destroy all of the "Confidential Data," the Florida Data, and the

Additional Data, and that Defendant be ordered to promptly provide the required Certificate of Compliance to Plaintiff;

(iv) Plaintiff be awarded compensatory damages in an amount to be determined at trial, together with pre- and post-judgment interest;

(v) Plaintiff be awarded treble damages pursuant to N.C. Gen. Stat. § 75-1.16 and punitive damages pursuant to N.C. Gen. Stat. § 1D-15;

(vi) Plaintiff be awarded attorney's fees pursuant to the Data Subscription Agreement;

(vii) Plaintiff be awarded attorneys' fees in accordance with N.C. Gen. Stat. § 75-16.1 and costs; and

(viii) Plaintiff be granted such other and further relief as the Court deems just and proper.

Respectfully submitted, this the 8th day of June, 2012.

MCGUIREWOODS LLP

By: *Lauren Loftis*

Brian A. Kahn
N.C. Bar No. 29291
Lauren B. Loftis
N.C. Bar No. 41391
201 North Tryon Street, Suite 3000 (28202)
Post Office Box 31247
Charlotte, North Carolina 28231
Telephone: 704-343-2356
Facsimile: 704-343-2300

*Attorneys for Plaintiff Data Driven Safety, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Complaint was served upon the Defendant to this action by mailing a copy thereof, postage prepaid, to the following:

DRIVER'S HISTORY, INC.
c/o Officer, Director, or Managing Agent or
Person in Charge of the Office of Such Officer, Director, or Managing Agent
1 Keystone Avenue, Unit 700
Cherry Hill, New Jersey 08003

This the 8th day of June, 2012.

*Lauren Loftis*
Lauren B. Loftis

# EXHIBIT A



## Schedule B
### FEES

A. **System Redesign.**

In exchange for Licensor's development of the capabilities to provide the Florida Data in the manner contemplated hereunder (the System Redesign), Licensee shall remit a one-time, non-reimbursable development initiation fee of $25,000. Licensor shall use its best efforts to complete the System Redesign within six (6) weeks of the Effective Date. Within one business day of the completion of the System Redesign, as communicated to Licensee by Licensor and evidenced by Licensor's ability to transfer Florida Data, Licensee shall remit an additional $25,000 payment by wire to Licensor (the "System Redesign Completion Payment").

B. **Data Fees.**

The Parties agree and acknowledge that the fees for delivering the Historical Florida Data are amortized ratably over the forty-eight (48) monthly payments required herein.

Barring early termination of this Agreement (in the manner permitted herein), Licensee is obligated to make 48 consecutive monthly payments commencing on the Go-Live Date or, in the event that Licensee has failed to secure at least one Subscribing Underwriter for the Florida Data, then it can make a one-time election in writing to delay the first payment until October 31, 2011. If such election is made, the forty-eight (48) monthly payments shall continue thereafter and November 1, 2011 shall be deemed the "Go-Live Date" solely for purposes of calculating the term of this Agreement.

Each monthly payment shall be transmitted electronically by wire to the account specified in writing from time to time by Licensor on the last calendar day of the month in anticipation of the Florida Data to be provided by Licensor in the subsequent month.

The Fees for the Florida Data shall be as described herein and reflected in the chart below. The base rate shall be forty thousand dollars ($40,000) per month (the "Base Rate"). The Base Rate for each month will increase as the number of individual queries to the database for Florida Data (each a "Database Hit") exceeds 100,000 in a calendar month, as follows:

- For calendar months when the Database Hits exceed 100,000, Licensee will pay Licensor an additional fee of ten thousand dollars ($10,000) beyond the Base Rate (the "Additional Fee");
- For calendar months when the Database Hits exceed 500,000, Licensee will pay an Additional fee of twenty thousand dollars ($20,000) beyond the Base Rate;
- For calendar months when the Database Hits exceed 1,000,000, Licensee will pay Licensor an Additional Fee of thirty thousand dollars ($30,000) beyond the Base Rate

For the avoidance of doubt, there are no volume adjustments for months when the Database Hits exceed 1,000,001. Licensee will add the Additional Fee to subsequent month's calculation. For clarification, in each month except the first 2 months, Licensee will pay Licensor the fee for the Base Rate as well as the Additional Fee for the second prior month.

| Monthly Database Hits | Monthly Price |
|---|---|
| 0 to 100,000 | $40,000 |
| 100,000 to 499,999 | $50,000 |
| 500,000 to 999,999 | $60,000 |
| 1,000,000 and beyond | $70,000 |

Licensee shall pay interest from the date of delinquency on any unpaid amounts due and owing Licensor at a rate equal to the lesser of (a) one-and-one-half (1.5%) percent per month, or (b) the maximum permitted by law. Licensee shall reimburse Licensor for all costs and expenses, including reasonable attorneys' fees, incurred by Licensor in its efforts to enforce or collect any portion of the Fees, the Liquidated Damages or the equitable rights defined in Section 25.